## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: National Arbitration Forum                    Civil No. 09-1939 (PAM/JSM)
Trade Practices Litigation,

**ORDER**

This document relates to:
All Actions

_____

This matter is before the Court on Defendants' Motions to Dismiss.  There are three

Motions pending: one brought by Defendants Dispute Management Services, LLC, National

Arbitration Forum, Inc., and National Arbitration Forum, LLC; one by Defendants Accretive,

LLC, and Agora; and one by Defendant Mann Bracken LLP.  On February 3, 2010, the

Judicial Panel on Multidistrict Litigation consolidated all pending cases to this Court for

pretrial purposes.

## BACKGROUND

Plaintiffs in this putative class action are individuals who had consumer debt, such as

credit-card debt, unpaid utility bills, consumer leases, and health care debt.  That debt was

submitted to binding arbitration pursuant to pre-dispute arbitration clauses in each

consumer's debt agreements.  The majority of these arbitrations were conducted under the

auspices of Defendants National Arbitration Forum, Inc., National Arbitration Forum, LLC,

or Dispute Management Services, LLC, doing business as Forthright (collectively, "NAF").

NAF's principal place of business is St. Louis Park, Minnesota.  The Amended Complaint

describes NAF as "the largest provider of consumer debt arbitrations in the United States."

(Am. Compl. ¶ 34.)

Defendant Accretive, LLC, is a private equity firm and owner of Defendant Agora, which is a private equity fund that has "substantial financial interests" in NAF.  (Id. ¶ 24.) Accretive also owns now-dismissed Defendant Axiant, a debt collection agency.  (Axiant was dismissed from this matter after it filed for bankruptcy.)  Axiant in turn owns moving Defendant Mann Bracken, LLP, "a debt collection law firm used by multiple consumer debt holders to file and prosecute arbitrations" before NAF.  (Id. ¶ 26.)  In 2006, the law firms that merged to become Mann Bracken filed 60% of the 214,000 arbitration claims processed by NAF.  Thus, according to Plaintiffs, Accretive and Agora had a financial interest in both NAF and in an organization that prosecuted arbitrations in front of NAF, a clear conflict of interest.  (E.g., id. ¶ 52.)

Plaintiffs also named as Defendants several consumer credit issuers, such as Capital One, J.P. Morgan Chase, Citigroup, and Wells Fargo.  Those Defendants have all been dismissed by stipulation.

On July 14, 2009, the Minnesota Attorney General brought a complaint in Hennepin County against NAF alleging consumer fraud act and deceptive trade practices act violations and false advertising.  NAF settled that litigation less than a week later, agreeing to cease performing consumer arbitrations and entering into a consent judgment to that effect with the Minnesota Attorney General.  At about the same time, Congress held hearings about consumer arbitrations.  After the hearings, the House committee made some rather shocking findings against NAF, including that more than 70% of the arbitrations the committee

reviewed should have been dismissed by NAF rather than resolved in favor of the lender. (Id. ¶ 87.a. (quoting Rep. of H. Domestic Pol'y Subcomm. Majority Staff of the Oversight & Gov't Reform Comm., "Arbitration Abuse: an Examination of Claims Files of the National Arbitration Forum," July 21, 2009).)  Plaintiffs point to California as an example of the biased nature of NAF's arbitrations, alleging that of the more than 18,000 disputes that went to an arbitration hearing before a NAF arbitrator in California between 2001 and 2007, consumers won only 30, or less than 0.2%.  In another lawsuit filed in this District, a former NAF employee contends that NAF routinely engaged in fraudulent and corrupt practices, including telling arbitrators to rule in favor of creditors and asking creditors how the arbitrators should rule.  (Id. ¶ 107 (referencing allegations in Richert v. Nat'l Arbitration Forum, LLC, No. 09-cv-763 (ADM/JJK)).)

Plaintiffs bring claims under a variety of legal theories.  The Amended Complaint alleges violations of: the Rackeeter Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (Counts I and II); the Federal Arbitration Act ("FAA") (Count III); due process (Count IV); Minnesota Consumer Fraud Act ("CFA") (Count V); Minnesota Unlawful Trade Practices Act (Count VI); Minnesota Deceptive Trade Practices Act (Count VII); tortious interference with contract (Count VIII); fraud (Count IX); and "unfair trade practices and consumer protection violations under the laws of all 50 states." (Id. ¶ 189) (Count X).

## DISCUSSION

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the Court takes all facts alleged in the complaint as true.  See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted).  The complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## A.    NAF's Motion

### 1.    Arbitral Immunity

NAF contends that the claims against it should be dismissed under the doctrine of arbitral immunity.  This immunity is similar to judicial immunity, and "protects all acts within the scope of the arbitral process."  Olson v. Nat'l Ass'n of Sec. Dealers, 85 F.3d 381, 382 (8th Cir. 1996).  Arbitral immunity is undeniably broad.  On a motion to dismiss, however, the Court must take Plaintiffs' allegations as true.  If discovery bears out the extent of the biased, corrupt conduct Plaintiffs allege, then it cannot fairly be said that NAF's actions were "within the scope of the arbitral process."  Moreover, one of the purposes of arbitral immunity is "to protect decision-makers from undue influence."  New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n, 199 F.3d 542, 545 (1st Cir. 1999).  Here, however, Plaintiffs' allegations are that the decisionmakers were not protected from the undue influence of both the creditors and NAF itself.  As the First Circuit put it, arbitral immunity is available "[i]n proper circumstances."  Id.  The circumstances set forth in the

4

Amended Complaint are far from proper.

The allegations Plaintiffs make are not procedural irregularities or even violations of the organizations' own rules. Rather, they are systemic, pervasive, and far-reaching allegations of bias and corruption, rendering every single arbitration performed by NAF suspect. At this stage of the litigation, NAF cannot claim arbitral immunity.

2.    FAA

NAF also argues that the FAA provides the exclusive remedy for the claims Plaintiffs bring. There is no doubt that the FAA preempts most claims arising out of arbitrations. In particular, the FAA is the exclusive remedy for challenges to arbitration agreements themselves. See, e.g., Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001) (noting that Supreme Court has held "that arbitration agreements can be enforced under the FAA"). Plaintiffs are not challenging the agreements they signed or to which they were bound. Rather, Plaintiffs' allegations are that the process set in motion by those agreements was fundamentally and egregiously unfair, because of the arbitrator's financial ties to the creditors and to the debt-collection agency and law firms those creditors used to prosecute the arbitrations. These claims cannot be preempted by the FAA's review provisions.

In addition, Plaintiffs challenge the validity of NAF's arbitration awards, which is something the FAA specifically addresses. The FAA provides that a Court may set aside an arbitration award "procured by corruption, fraud, or undue means" or for "evident partiality in the arbitrators." 9 U.S.C. § 10(a). These are precisely Plaintiffs' allegations here, and thus Plaintiffs' claims include a claim under the FAA. However, "[t]he FAA is not the only way

into court for parties wanting review of arbitration awards; they may contemplate enforcement under state statutory or common law, for example, where judicial review of a different scope is arguable." Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 128 S. Ct. 1396, 1406 (2008). At this early stage of the litigation, Plaintiffs are entitled to discovery on their claims, so that the Court may more fully address the question of whether other law might apply to the Court's review of the arbitration awards at issue.

3.    Damages

NAF contends that the Amended Complaint must be dismissed because Plaintiffs have failed to properly allege damages. However, several Plaintiffs specifically state the amount they were forced to pay after engaging in the allegedly biased and unfair arbitrations. This alone is sufficient. Moreover, Plaintiffs contend that they were forced to pay arbitration fees and fees for lawyers. Basically, NAF argues that unless Plaintiffs can prove that they did not in fact owe the money to their creditors that the arbitrations awarded, their damages claims are specious. But this is a question of fact and it is very much in dispute. Plaintiffs do not have to plead damages with the particularity NAF seeks and this portion of the Motion is denied.

4.    Proximate Cause

NAF's argument that Plaintiffs have failed sufficiently to plead causation depends on its argument that Plaintiffs did not sufficiently plead damages. (See NAF's Supp. Mem. at 23 ("Plaintiffs allege no harm . . . actually connected to any of the NAF Defendant's [sic] alleged actions.").) As discussed above, however, for the purposes of a Motion to Dismiss,

6

Plaintiffs' damages allegations are sufficient.  In addition, Plaintiffs have alleged that the harm was caused by NAF or, as NAF puts it, "that the loss was foreseeable and caused by the materialization of the concealed risk." (Id. (quoting Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008).)  Specifically, Plaintiffs allege that NAF was biased in favor of creditors and, as a result, the arbitrations were biased and unfair to consumers.  They also allege that they were on the losing end of their arbitrations.  These allegations sufficiently plead loss causation.

5.    Reliance

There is no dispute that reliance is an element of a common-law fraud claim. Plaintiffs' fraud claim is an omission claim—that NAF was biased and failed to disclose that bias.  Thus, the reliance at issue is reliance on the presumption of impartiality.  Plaintiffs have adequately pleaded that reliance.  Indeed, such reliance underpins our entire system of justice.  Everyone who comes to court or engages in arbitration or mediation presumes that the decisionmaker is unbiased and brings that case or agrees to go before that decisionmaker precisely because they believe that the decisionmaker is unbiased.  Plaintiffs have adequately pled reliance.

6.    RICO

NAF contends that Plaintiffs' RICO claims fail for two reasons.  First, NAF argues again that Plaintiffs cannot show causation, that NAF's actions caused Plaintiffs any injury. But for the purposes of the Motion to Dismiss, Plaintiffs have alleged causation.

NAF next asserts that Plaintiffs have not alleged a pattern of racketeering activity or

sufficient predicate acts.  Although this Court has been critical of the overuse of civil RICO, according to Plaintiffs' allegations, this case appears to be the rare case for which civil RICO is appropriate.  The predicate acts are mail and wire fraud, or NAF's communications with both consumers, creditors, and its own arbitrators.  Plaintiffs point to only two specific mailings, but there are undoubtedly many thousands more mailings that will be revealed by discovery.  NAF complains that Plaintiffs have not established any particular instance of use of the wires, but it is almost impossible for Plaintiffs to have specific examples of wire fraud (e-mails being the most likely example) without any discovery.  Plaintiffs are not privy to NAF's e-mail system, and it strains credulity to believe that NAF did not send any e-mails whatsoever in support of the wide-ranging fraud alleged in the Complaint.

If discovery reveals no predicate acts, Defendants can seek summary judgment on the civil RICO claims.  At this stage, Plaintiffs have sufficiently pleaded a cause of action for civil RICO and the Motion to Dismiss these claims is denied.

7.    Due Process

NAF asks the Court to dismiss Plaintiffs' Fifth Amendment Due Process claim for lack of state action.  Plaintiffs contend that the required state action is a question of fact that cannot be resolved on a Motion to Dismiss.  However, NAF is a private entity.  It may have been engaged in quasi-judicial functions, but that does not mean it is a state actor.  There is no state action here and this Count is dismissed.

8.    Tortious Interference

NAF contends that Plaintifs have failed to plead the elements of their tortious

8

interference claim, namely the existence of and breach of a contract. Plaintiffs have certainly pled a contract between Plaintiffs and their creditors to submit disputes to binding arbitration. However, Plaintiffs have failed to allege a breach of that contract. The Amended Complaint contends that NAF "intentionally interfered, without privilege or justification, . . . specifically with Plaintiffs' entitlement to neutral and impartial arbitration proceedings under [the] contracts." (Am. Compl. ¶ 175.) Thus, Plaintiffs allege that the contract implicitly required an impartial arbitration, and by failing to provide that impartial arbitration, NAF interfered with the contract. This allegation simply does not state a claim for tortious interference, and this claim is dismissed.

9.   CFA, UTPA, DTPA

Finally, NAF asserts that Plaintiffs do not have standing to bring their Minnesota statutory claims, because the Attorney General has already sued NAF to enforce these statutes and obtained a consent judgment. The Attorney General's action means that there is no public benefit to Plaintiffs' claims, which is a necessary element of all of these claims. Minn. Stat. § 8.31, subd. 3a; see also Weigand v. Walser Auto. Groups, Inc., 681 N.W.2d 807, 809 (Minn. 2004) (noting that CFA confers no private right of action, so private CFA claims must be brought under § 8.31).

In Ly v. Nystrom, the Minnesota Supreme Court held that "the Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public." 615 N.W.2d 302, 314 (Minn. 2000). Several other courts have found that Ly stands for the proposition that, when the Attorney General has "intervened to correct the

9

complained-of . . . activity and provided a remedy for aggrieved consumers" there is no longer any public benefit to a private lawsuit.  <u>Weigand v. Walser Auto. Groups, Inc.</u>, No. A05-1911, 2006 WL 1529511, at *3 (Minn. Ct. App. June 6, 2006); <u>see also</u> <u>Simonson v. Ameriquest Mortgage Co.</u>, Civ. No. 06-2943, 2006 WL 3463000, at *4 (D. Minn. Nov. 30, 2006) (Montgomery, J.) ("[T]he fact that state attorneys general . . . reached a settlement with Ameriquest suggests that Plaintiff's lawsuit can confer only a negligible additional public benefit.").

Plaintiffs contend that the cases applying <u>Ly</u> have done so too broadly, and that <u>Ly</u>'s true holding was that a private claimant cannot get attorney's fees under the consumer-protection statutes in the absence of a public benefit.  The language of <u>Ly</u>, however, belies Plaintiffs' contention.  "We find further support for our holding that public interest must be demonstrated to state a claim under the Private AG Statute . . . ." <u>Ly</u>, 615 N.W.2d at 314. The court did not say, "state a claim for attorney's fees" but rather, "state a claim."

However, the allegations in this case indicate that there may be a public benefit to Plaintiffs' lawsuit despite the Attorney General's consent decree. That consent decree merely required NAF to cease and desist its consumer arbitration operations.  Thus, Plaintiffs' continued pursuit of monetary damages for the class against NAF has a public benefit.  At this stage of the litigation, Plaintiffs's consumer-protection claims can go forward.

**B.     Accretive and Agora's Motion**

Accretive and Agora essentially contend that they are not responsible for the actions of NAF, that Plaintiffs cannot pierce the corporate veil to make them responsible, and that

Plaintiffs have otherwise failed to state a cause of action for fraud and RICO (making similar arguments to those NAF makes).

      1.    <u>Direct Liability</u>

Accretive and Agora first argue that a parent corporation is not liable for the wrongs of its subsidiaries. This is undoubtedly true, but Plaintiffs' allegations are not that Accretive and Agora are vicariously liable for the wrongs in the Amended Complaint, but that these companies directly participated in those wrongs and in fact directed the scheme outlined in the Amended Complaint. Certainly Accretive and Agora can be directly liable for wrongs they committed. Moreover, given the allegations of direct liability, there is no need to pierce the corporate veil.

Accretive and Agora also contend that they do not own NAF. Rather, they own an interest in Forthright, which, according to them, only provides back-office services to NAF. They claim that they have no interest in, or control over, the arbitration process as run by NAF. Moreover, Accretive and Agora allege that they do not have the ability to control Forthright, because they have only a limited minority investor interest in Forthright. All of this may turn out to be true, but it is not what is alleged in the Amended Complaint. According to the Amended Complaint, Accretive and Agora directed the corrupt arbitration scheme and in fact the scheme was the brainchild of these corporate Defendants. (<u>See, e.g.</u>, Am. Compl. ¶ 136.) To the extent that the Motion to Dismiss is based on Defendants' arguments about parent corporations' liability for their subsidiaries' actions, that Motion fails.

11

Moreover, as Plaintiffs point out, the veil-piercing inquiry is a factual inquiry that is not amenable to resolution on a motion to dismiss. Thus, even if some of Plaintiffs' allegations depend on piercing the corporate veil between NAF and Accretive and Agora, the Motion to Dismiss is denied.

2.    <u>Misrepresentations</u>

Accretive and Agora contend that Plaintiffs have failed to allege that Accretive and Agora made any misrepresentations, and thus that Plaintiffs' common-law and statutory fraud claims fail as a matter of law. They argue that Plaintiffs claim only that "Defendants" made misrepresentations or omissions, without specifying which Defendant said or omitted what.

In a fraud-by-omission case under Minnesota law, a plaintiff must show that the defendant had a duty to disclose but did not do so. <u>Exeter Bancorp., Inc. v. Kemper Sec. Group, Inc.</u>, 58 F.3d 1306, 1314 (8th Cir. 1995). This duty to disclose arises in situations where the defendant "has special knowledge of material facts to which the other party does not have access." <u>Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.</u>, 450 F.3d 816, 821 (8th Cir. 2006). Plaintiffs allege that Accretive and Agora controlled the other Defendants in the allegedly corrupt scheme, and that they knew about the affiliation between all Defendants but failed to disclose this information. These allegations sufficiently plead fraudulent omissions by Accretive and Agora and the Motion to Dismiss on this ground is denied.

3.    <u>RICO</u>

Accretive and Agora make the same arguments NAF makes with respect to Plaintiffs'

12

RICO claims: Plaintiffs have failed to establish the predicate acts necessary to support a RICO claim and Plaintiffs have not alleged causation with respect to their RICO claims. As discussed above, Plaintiffs must be allowed discovery on the predicate acts and, if discovery reveals that Accretive and Agora had no direct responsibility for any of the wire or mail fraud, then the RICO claims can be dismissed at summary judgment. Moreover, Plaintiffs have sufficiently pled causation.

Accretive and Agora also contend that Plaintiffs have failed to plead the required RICO enterprise. This contention ignores the allegations in the Amended Complaint, which alleges a corrupt enterprise in which Accretive and Agora played a direct role. The Motion to Dismiss the RICO claims is denied.

## C.    Mann Bracken's Motion

As described above, Mann Bracken is a debt-collection law firm. It contends that Plaintiffs' allegations against it fail because Plaintiffs have alleged only that Mann Bracken filed and prosecuted arbitrations before NAF. (Mann Bracken's Supp. Mem. at 2.) This statement ignores the literally pages of allegations regarding the complex scheme at the heart of this case. In that scheme, a debt-collection agency (Axiant) owned a debt-collection law firm (Mann Bracken) and also owned the arbitration company (NAF) before whom the law firm prosecuted essentially all of its debt-collection actions. Mann Bracken was an essential player in this alleged scheme—as noted above, Mann Bracken filed nearly 60% of the disputes before NAF—and the argument that Plaintiffs have not alleged any direct involvement on the part of Mann Bracken borders on the frivolous.

13

Mann Bracken's Motion essentially repeats the arguments in NAF's Motion.  Mann Bracken argues that Plaintiffs' exclusive remedy is the FAA, but at this stage of the litigation, it is impossible to say that the FAA preempts all of Plaintiffs' claims.  Mann Bracken also contends that Plaintiffs' RICO claims are insufficient but, as discussed in detail above, Plaintiffs have alleged what is required for the RICO claims to proceed to discovery.  In addition, Mann Bracken argues that Plaintiffs' statutory fraud claims fail because Plaintiffs are not providing a public benefit.  As discussed above, however, Plaintiffs have alleged a sufficient public benefit to proceed on the statutory claims.  For all of the reasons discussed above with respect to NAF's Motion, Mann Bracken's Motion is denied.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendants Dispute Management Services, LLC, National Arbitration Forum, Inc., and National Arbitration Forum, LLC's Motion to Dismiss (Docket No. 159) is **GRANTED in part** and **DENIED in part**;

2.    Counts IV and VII of the Amended Complaint are **DISMISSED**;

3.    Defendants Accretive, LLC, and Agora's Motion to Dismiss (Docket No. 162) is **DENIED**; and

4.    Defendant Mann Bracken LLP's Motion to Dismiss (Docket No. 166) is **DENIED**.

Dated:  February 22, 2010                          s/Paul A. Magnuson
                                                    Paul A. Magnuson
                                                    United States District Court Judge

14